■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH C. NORFLEET, Appellant. [704 NYS2d 146] —Mercure, J. P. Appeal from a judgment of the County Court of Albany County (Rosen, J.), rendered June 19, 1996, upon a verdict convicting defendant of the crimes of burglary in the second degree, attempted rape in the first degree, sexual abuse in the first degree and petit larceny.

Defendant's convictions arise out of an occurrence that took place at the victim's home in the City of Albany during the nighttime hours of June 2-3, 1995. According to the victim's trial testimony, she saw defendant's face in a ground floor window when she was preparing to have a snack following an 11:00 P.M. television news show. Defendant, who was known to the victim and was a contemporary of her son, identified himself to the victim and indicated that he wanted to speak with her. The victim stated that she had a cold and did not receive visitors at that late hour; she refused to admit defendant and asked him to leave. The victim then turned off the lights and went upstairs to bed.

Sometime later, the victim heard sounds downstairs and went down to find defendant standing nude in her kitchen. The victim directed defendant to get dressed and to replace the screen he had removed from a window in order to gain entry. Although defendant initially complied, when the victim went to get a coat in order to flee the premises, defendant grabbed her and threw her to the floor. He then kissed the victim, which she repelled by biting his lip, and fondled her breasts. Defendant attempted to engage the victim in sexual intercourse but was unable to pry apart her legs. Then, as related by the victim, defendant "put his hands into [her] vagina". The victim continued to struggle and beat defendant on the back with a fly swatter. She ultimately convinced defendant to discontinue the attack and talk with her over a cup of tea. The victim made the tea, engaged defendant in a conversation and seized the first opportunity to escape, running to a nearby fire station.

The police were called to the scene and took a statement from the victim. A search of her home revealed that approximately $160 was missing from her purse. The police went to defendant's home and spoke with defendant's mother and then with defendant, who accompanied them to the police sta-

tion for questioning. Defendant gave the police oral and written statements admitting that he had entered the victim's home, removed his shirt and attempted to kiss the victim and that the victim had left her house in the middle of the night, but making no mention of any physical attack, attempted rape or sexual abuse of the victim or the theft of money from her purse. Defendant was then arrested. He permitted the police to take photographs of his injured lip and abrasions on his back. Later, defendant's mother contacted the police and advised them that she had found eight $20 bills in defendant's pants pocket that did not belong to him. The police took possession of the money and later made photocopies of the bills and returned the money to the victim.

Of the many assertions of error raised by defendant, only one warrants extended discussion. We agree with the contention that defendant was denied effective assistance of counsel, requiring that we reverse the judgment of conviction and remit the matter for a new trial. It should be stated at the outset that this was not an easy case to defend. The only witnesses to the events at issue were the victim and defendant. The victim appears to have had no motive to fabricate her story and, other than exhibiting some difficulty in estimating time, presented herself as a competent, credible and fairly unimpeachable witness. Defendant, on the other hand, had an obvious motive to fabricate and his extensive prior criminal record was available for impeachment purposes. Further, in view of the victim's undisputed familiarity with defendant, identity was not at issue.

From defendant's perspective, the case had to be viewed as a very strong candidate for a negotiated disposition. In fact, the record reveals that defendant was offered but rejected a very desirable plea bargain that would have permitted him to dispose of the indictment with a guilty plea to a single class D felony and receive a prison sentence of 2⅓ to 7 years. Absent a plea bargain, it appears that the only plausible defense strategy was to offer evidence of defendant's intoxication in an attempt to negate the element of intent with regard to the various crimes charged in the indictment (*see*, Penal Law § 15.25; *People v Perry*, 61 NY2d 849; *cf.*, *People v Rodriguez*, 76 NY2d 918, 920-921; *People v Barger*, 202 AD2d 755, 756, *lv denied* 84 NY2d 932).

In defendant's written statement to the police, he indicated that he had been drinking at a nearby bar from approximately 5:00 P.M. on June 2, 1995. The statement also indicated that during the course of the evening, defendant was joined by his

mother and friends of theirs, who undoubtedly could have offered useful testimony concerning the type and quantity of the alcoholic beverages consumed by defendant. In fact, defendant's mother testified that defendant had consumed approximately five beers as of the time she left the bar. Defendant's statement also indicated that he had no recollection as to how he gained entry into the victim's home or how the victim came to be wearing her coat at some point, that he did not know why he tried to kiss her and that he and the victim had a discussion in which "[the victim] advised [defendant] about the ills of drinking". Finally, the victim testified that there was a strong odor of alcohol on defendant's breath, and she told him that because of her training in alcohol and drugs she suspected that "all he is doing is because of the alcohol, that alcohol is going to make him do crimes * * * and he's at a point where he's going to continue to do that".

In his summation, defense counsel made sporadic references to defendant's intoxication, at one point going so far as to theorize that the victim fabricated the story of the sexual assault committed upon her by defendant because she had voluntarily admitted him into her home but then came to realize that he was extremely intoxicated. As explained by defense counsel, because defendant would not leave her house and she had no telephone, the victim had to go to somebody and, if she acknowledged that she had let defendant in, "she may not get the response that she's looking for". She therefore made up events such as would justify police intervention. Despite the fact that defendant's intoxication was a cornerstone of this highly implausible narrative and the fact that, even absent any purposeful effort on defendant's part, sufficient evidence had been adduced to support a finding that defendant was extremely intoxicated, defendant did not request that the jury be charged on intoxication.

In our view, defense counsel's failure to pursue any identifiable defense strategy (other than his questionable effort at discrediting the victim), including his failure to offer available evidence of defendant's intoxication and seek an intoxication charge, transcended mere losing tactics and constituted "true ineffectiveness" (*People v Baldi*, 54 NY2d 137, 146). In addition, defendant is correct in his contention that defense counsel committed further prejudicial errors in, among other things, (1) failing to object to County Court's charge defining "forcible compulsion" on the basis of both physical force (Penal Law § 130.00 [8] [a]) and threats, express or implied (Penal Law § 130.00 [8] [b]), despite the fact that the indictment and bill of

particulars alleged only the former (*see, People v Kaminski*, 58 NY2d 886), (2) failing to seek the submission of any lesser included offenses, and (3) presenting a closing statement which articulated no plausible theory of defense and essentially conceded defendant's guilt of the petit larceny count. We can discern no tactical purpose underlying those actions and conclude that, "viewed in totality and as of the time of the representation", defense counsel failed to provide meaningful representation (*People v Baldi, supra,* at 147).

We are unpersuaded by defendant's challenges to County Court's *Huntley, Mapp,* and *Sandoval* rulings. In view of our determination to reverse the judgment of conviction and remit the matter for a new trial, we need not consider defendant's additional contentions.

Crew III, Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, and matter remitted to the County Court of Albany County for a new trial.